Dear Mayor Roach:
You have requested an opinion of this Office regarding an interpretation of the interplay between State law, a City ordinance, and some specific factors related to the use of a parcel of public property located along the shore of Lake Charles. The specifics of your request are as follows:
The City of Lake Charles ("City") held a special election in 2007, pursuant to La.R.S. 33:4699.1(D), requesting that a majority of the City's voters approve the use of a portion of the Lake Charles shoreline for "commercial development, which supports recreational use."[1] The voters approved this use, and the City's Charter was amended to allow for the use of the subject property in accordance with the election results. The City now seeks to lease a portion of the subject property to the Southeast Texas War Memorial and Heritage Foundation ("STWMHF"). The purpose of this lease would be to allow STWMHF to dock the U.S.S. Orleck (which STWMHF now owns) in the water adjacent to the subject property for its use as a museum. Pursuant to this scenario, you have asked the following questions:
 1) Does the election and/or the Charter amendment prohibit the activity requested by the STWMHF due to the "recreational designation" until an election occurs that allows the use now requested by the STWMHF to go forward? *Page 2 
 2) Does the activity or use proposed by STWMHF constitute a "recreational use" pursuant to the "recreational designation" thus obviating the need for an election?
 3) If the election does not limit the use to recreation, does the nature of the request by STWMHF require an election based on the provisions of La.R.S. 33:4699.1(D)?
 4) If the non-profit status of the corporation is the factor that obviates the need for another election, what IRS requirements and or documentation are required, if any?
 5) Finally, if no election is required due to the non-profit status of the corporation, would there be any restrictions on use based on the monetary cost to the public to view the ship or monetary cost to the public for private functions and/or retail sales?
Each of your questions is answered in the order that they are posed.
Does the election and/or the Charter amendment prohibit theactivity requested by the STWMHF due to the "recreationaldesignation" until an election occurs that allows the use nowrequested by the STWMHF to go forward?
Both the election and the Charter amendment note that the voted-upon change in use is for "commercial development, which supports recreational use." Although there is a mention of "recreational use" in the ballot measure and the Charter amendment, this mention appears only to reference the fact that the "commercial development" is intended to "support" putting the area to a "recreational use." Such a use is clearly permitted by La.R.S. 33:4699.1(D).[2] In other words, it is *Page 3 
the opinion of this Office that the law is clearly broad enough to permit the proposed use of the Lake Charles waterfront, pursuant to an approval by the voters. However, for the reasons set forth below, the election made pursuant to this law currently restricts the proposed use of the Lake Charles waterfront. Before reaching the rest of your questions, we must address an issue that has come to our attention subsequent to the submission of your opinion request.
Based upon numerous conversations with you and your staff it is now clear that the proposed location for the docking of the U.S.S. Orleck would require the placement of the gangplank to access the vessel outside of the 125-foot area that was the subject of the 2007 election (i.e., outside of the portion of Tract 4 that is currently approved for commercial development). Because the remaining portion of Tract 4 is only authorized for recreational uses and because the operation of a museum is considered to be a commercial activity, [3] it is our opinion that the current plans are not authorized by the 2007 election.
Does the activity or use proposed by STWMHF constitute a"recreational use" pursuant to the "recreational designation" thusobviating the need for an election?
The answer to this question is only applicable if STWMHF alters its current plans and proposes that the U.S.S. Orleck's gangplank emerge from the 125-foot portion of Tract 4 that is designated for "commercial development, which supports recreational use." Further, this question is partly factual in nature. As such, this Office recommends that the City seek a declaratory judgment from a court of competent jurisdiction as to whether the activities proposed by STWMHF (i.e., lease and docking of the U.S.S. Orleck) qualify as a "recreational use." Should the proposed use be classified as a "recreational use," it is the opinion of this Office that the previous election's allowance of "commercial development, which supports recreational use" was sufficient to cover for and permit the proposed use identified in your opinion request. Accordingly, there would be no need to have an election to request the authority for the City to do what the City already has the authority to do. However, if it is determined that the proposed activity does not qualify as a "recreational use," it is the opinion of this Office that a second election would be necessary to determine whether the voters would approve of the proposed use.
If the election does not limit the use to recreation, does thenature of the request by STWMHF require an election based on theprovisions of La.R.S. 33:4699.1(D)? *Page 4 
Our answer to this question is in the negative. The law, La.R.S. 33:4699.1(D), allows for an election to be held to use the subject property for "any commercial and profit-oriented purpose." The election that was held pursuant to this legal requirement included seeking the authority from the voters to put the subject property to a "commercial use, which supports recreational use." Accordingly, it is the opinion of this Office, subject to the caveat noted above, that if STWMHF's proposed activities are determined by a court to be "commercial development, which supports recreational use," it is clear that the law does not require an additional election. However, if a court determines that the previous election does not allow for the proposed activity, then, it is our opinion, again, subject to the caveat above, that the original election was too narrowly tailored to permit the proposed activity and a second election is necessary.
If the non-profit status of the corporation is the factorthat alleviates the necessity of another election, what IRSrequirements and or documentation are required, if any?
It is the opinion of this Office that the question related to the tax status of STWMHF is not a factor in the analysis of whether proper authority was sought and granted in the vote for the redesignation of the use of the subject property. The law is broad enough to cover all commercial development as approved by the voters except for gaming.[4] Thus, there is no implication of the tax status of STWMHF. In this regard, it is important to note that the restrictions on the subject property relate to the use of the property and not to the user. Thus, the tax status or profit/nonprofit classification of a proposed user is of no moment when analyzing compliance with the terms of the legal restrictions on the use of the property.
Finally, if no election is required due to the non-profitstatus of the corporation, would there be any restrictions on usebased on the monetary cost to the public to view the ship ormonetary cost to the public for private functions and/or retailsales?
Once again, it is the opinion of this Office that the answer to this question is in the negative. The U.S.S. Orleck is a private thing, [5] for which its owner (STWMHF) can charge for access. The fact that this private thing might dock at a public place does not affect the owners' rights to charge for access to its thing. However, simply because the vessel is a private thing, there is still a requirement that the City get fair value for the use of its property (i.e., the docking of the *Page 5 
private vessel and any use of the adjacent shore).[6] A lease of the use of the subject property or something similar should fulfill this requirement. However, none of this should affect STWMHF's right to charge for the use of its private property.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ RYAN M. SEIDEMANN Assistant Attorney General
 JDC/RMS/tp
[1] The quoted language is an excerpt from Proposition No. 2, as it applies to your current question. The matter was put to a vote of the people on May 5, 2007, and passed with a wide majority.See, City Resolution No. 127-07 (copy on file with the Louisiana Department of Justice).
[2] La.R.S. 33:4699.1(D) provides as follows (emphasis added):
 Notwithstanding any other provision of this Section to the contrary, upon approval by a vote of a majority of the electors qualified to vote in the city of Lake Charles voting thereon in a special election called for such purpose, the city shall have full and exclusive right, jurisdiction, power, and authority to lease and develop all or any portion of any of the property described in this Section in accordance with the procedures provided herein, for any commercial and profit-oriented purpose, including gaming as defined by law, or any residential purpose, pursuant to the design guidelines for such development in order to facilitate hurricane recovery and in accordance with a permit for development issued by the city on or before December 31, 2008. Upon voter approval of this planned development as provided herein, the city may also construct, acquire, extend, or improve facilities such as marinas, motels, hotels, restaurants, residential housing, commercial office space and boating facilities and provide roads, sewer, water and other utilities to facilitate such plan for commercial or residential use. Nothing in this Paragraph shall in any way supersede the sole authority and responsibility of the Louisiana Gaming Control Board relative to gaming as specified in R.S. 27:15.
[3] See, Camps Newfound/Owatonna, Inc. v. Town of Harrison,Maine, 520 U.S. 564, 585 (1997), in which the United States Supreme Court notes that,
 [s]ome educational institutions, some hospitals, some child care facilities, some research organizations, and some museums generate significant earnings; and some are operated by not-for-profit corporations.
[4] Gaming is specifically excepted from the definition of "commercial use" by the statute itself. La.R.S. 33:4699.1(D).
[5] The U.S.S. Orleck is here classified as a "private thing" as that term is used in the Louisiana Civil Code. La.C.C. Art. 453. This classification is based upon the purchase of the vessel by STWMHF from the federal government.
[6] La.Const. Art. VII, Sec. 14(A). See also, Board ofDirectors of the Industrial Development Board of the City ofGonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06),938 So.2d 11.